**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| **MAGNACROSS LLC,**<br><br>　　　　　　　Plaintiff,<br><br>　v.<br><br>**LEVITON MANUFACTURING CO., INC.,**<br><br>　　　　　　　Defendant. | C.A. NO. _____<br><br>**JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Magnacross LLC files this Original Complaint for Patent Infringement against Leviton Manufacturing Co., Inc. and would respectfully show the Court as follows:

### I. THE PARTIES

1. Plaintiff Magnacross LLC ("Magnacross" or "Plaintiff") is a Texas limited liability company with its principal place of business at 5900 South Lake Forest Drive, Suite 300, McKinney, Texas 75070.

2. On information and belief, Defendant Leviton Manufacturing Co., Inc. ("Defendant") is a corporation organized and existing under the laws of Delaware, with a place of business at 201 North Service Road, Melville, NY 11747. Defendant has a registered agent at Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

### II. JURISDICTION AND VENUE

3. This action arises under the patent laws of the United States, Title 35 of the United States Code. This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4. On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Delaware Long-Arm Statute, due

at least to its business in this forum, including at least a portion of the infringements alleged herein. Furthermore, Defendant is subject to this Court's specific and general personal jurisdiction because Defendant is a Delaware corporation.

5. Without limitation, on information and belief, within this state, Defendant has used the patented inventions thereby committing, and continuing to commit, acts of patent infringement alleged herein. In addition, on information and belief, Defendant has derived revenues from its infringing acts occurring within Delaware. Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Delaware. Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Delaware. Defendant has committed such purposeful acts and/or transactions in Delaware such that it reasonably should know and expect that it could be haled into this Court as a consequence of such activity.

6. Venue is proper in this district under 28 U.S.C. § 1400(b). On information and belief, Defendant is incorporated in Delaware. On information and belief, from and within this District Defendant has committed at least a portion of the infringements at issue in this case.

7. For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

### III. COUNT I
### (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 6,917,304)

8. Plaintiff incorporates the above paragraphs herein by reference.

9. On July 12, 2005, United States Patent No. 6,917,304 ("the '304 Patent") was duly and legally issued by the United States Patent and Trademark Office. The '304 Patent is

titled "Wireless Mutliplex [*sic*] Data Transmission System." The PCT application leading to the '304 Patent was filed on April 3, 1998. A true and correct copy of the '304 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     Magnacross is the assignee of all right, title and interest in the '304 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '304 Patent. Accordingly, Magnacross possesses the exclusive right and standing to prosecute the present action for infringement of the '304 Patent by Defendant.

11.     The invention in the '304 Patent relates to methods and apparatuses for the wireless transmission of data through a communications channel from at least two local data sensors to a data processor. (Ex. A at col. 1:4-7). Prior to the filing of the initial application in 1997, the inventors of the '304 patent recognized that there were problems with the efficiency of transmitting data from sensors to data processors. (Ex. A at col. 1:4-7; col. 2:5-13). Conventional methods usually had data transmitted from data sensors to the data processors using cables that put limitations on the convenience and operations of the equipment. (*Id.* at col. 1:37-40). Attempts were made to achieve wireless transmission from the data sensors to data processors; however, these attempts had shortcomings. One main issue with the conventional wireless transmission systems is they resulted in inefficient bandwidth utilization. (*Id.* at col. 1:50 – 2:1). For example, in a system in which there are sensors that require high data transmission rates and sensors that require lower data transmission rates, a conventional system would set aside the same amount of bandwidth for both types of sensors necessarily resulting in overutilization or underutilization of bandwidth requirements. (*See id.*).

12. The inventors therefore created a method and system by which data sensors with substantially different data rates required for data transmission would have the data transmitted over an asymmetrically divided communication channel such that the data from the sensors is allocated to ones or groups of the sub-channels based on the data carrying capacities of the sub-channels. (*See id.* at col. 7:30-45; col. 8:20-35). For example, a data sensor with higher data rate requirements was assigned a sub-channel or group of sub-channels with a higher data rate capacity and a data sensor with lower data rate requirements was assigned a sub-channel with a lower data rate capacity. (*E.g.*, *see id.* at col. 5:22-26).

13. **Direct Infringement.** Upon information and belief, Defendant has been directly infringing claim 1 of the '304 patent in Delaware, and elsewhere in the United States, by actions comprising using (including through testing and demonstrations) an apparatus for the transmission of data in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means said method comprising the step of division of said channel into sub-channels and transmitting said data from said data sensors respectively though said sub-channels in the manner required by claim, including without limitation performing the steps using Defendant's Wireless 802.11n Dual-Band Gigabit Router 47611-WG4 ("Accused Instrumentality").

14. On information and belief, Defendant has used the Accused Instrumentality to perform the method of wireless transmission of data in digital and/or analogue format through a communications channel from at least two data sensors to a data processing means said method comprising the step of dividing the channel into sub-channels and transmitting the data from the data sensors respectively though the sub-channels. For example, the Accused Instrumentality transmits data through the 2.4 GHz channel, between approximately 2.4 GHz and 2.5 GHz.

(*E.g.*, https://www.leviton.com/en/products/47611-wg4; https://www.leviton.com/en/docs/Leviton_47611-WG4_UserManual.pdf). On information and belief, Lexmark has used the Accused Instrumentality to transmit data through a communication channel from at least two data sensors to a data processing means. (*E.g.*, https://www.leviton.com/en/products/47611-wg4; https://www.leviton.com/en/docs/Leviton_47611-WG4_UserManual.pdf). Upon information and belief, Defendant has used the Accused Instrumentality to divide the channel into subchannels and transmit data from the data sensors respectively through the subchannels. For example, the Accused Instrumentality transmits data from data sensors using the 802.11 b/g and 802.11n wireless standards that divide the 2.4 GHz channel into subchannels. (*E.g.*, http://www.extremetech.com/computing/179344-how-to-boost-your-wifi-speed-by-choosing-the-right-channel; http://www.polytech2go.fr/topnetworks/lectures/book16pe1.pdf; http://airmagnet.flukenetworks.com/assets/whitepaper/WP-802.11nPrimer.pdf).

15. Upon information and belief, Defendant has used the Accused Instrumentality to divide the channels asymmetrically whereby data-carrying capacity of the sub-channels are unequal. For example, 802.11g (20 MHz channel) data is divided into 52 sub-carriers (sub-channels) and 802.11n (20 MHz channel) data is divided into 56 sub-carriers (sub-channels) that carry different amounts of data. (*E.g.*, https://www.bicsi.org/uploadedfiles/PDFs/Conferences/singapore2010/day2/2.8%20802.11n%20Deployment%20-%20Alfred%20Chan,%20Trapeze.pdf).

16. Upon information and belief, Defendant has used the Accused Instrumentality to transmit data from the local sensors that differs substantially between at least two sensors. For

example, the data carrying capacity of 802.11b/g standard has a maximum throughput that is substantially lower than the throughput allowable using 802.11n.

17.  On information and believe, Defendant has used the Accused Instrumentality to perform the step of allocating data from the local data sensors to respective ones or groups of sub-channels in accordance with the data carrying capacities of the subchannels. For example, when an 802.11b/g device communicates with the Accused Instrumentality, because the device can only send data at the data rate of the slower 802.11b/g standard, the Accused Instrumentality assigns the 802.11b/g device to an 802.11b/g channel.  802.11b/g data is allocated to the 48 data sub-channels in accordance with the data rate requirements of the 802.11b/g device's sensor, with 54 Mbps being the maximum data rate allocable to the 802.11 b/g device.

18.  Plaintiff has been damaged as a result of Defendant's infringing conduct. Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such Defendant's infringement of the '304 patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

19.  On information and belief, Defendant has had at least constructive notice of the '304 patent by operation of law, and there are no marking requirements that have not been complied with.

## IV.  JURY DEMAND

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## V. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a. Judgment that one or more claims of United States Patent No. 6,917,304 have been infringed, either literally and/or under the doctrine of equivalents, by Defendant;

b. Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c. That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein;

d. That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

January 29, 2020

OF COUNSEL:

David R. Bennett
Direction IP Law
P.O. Box 14184
Chicago, IL 60614-0184
(312) 291-1667
dbennett@directionip.com

STAMOULIS & WEINBLATT LLC

 */s/ Stamatios Stamoulis*
Stamatios Stamoulis
800 N. West Street, Third Floor
Wilmington, DE 19809
(302) 999-1540
stamoulis@swdelaw.com

*Attorneys for Plaintiff Magnacross LLC*